## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHARLES SWAFFORD,                                      Case No. 1:12-cv-19

        Plaintiff,                                  Barrett, J.
                                                       Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Charles Swafford filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

In June 2008, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of January 26, 2008 due to physical and mental impairments.  (Tr. 127-34).  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing, at which Plaintiff was represented by counsel, was held on July 15, 2010.  (Tr. 33-70).  A vocational expert,

Robert Breslin was also present and testified. On August 26, 2010, ALJ Larry Temin denied Plaintiff's application in a written decision. (Tr. 14-27).

The record on which the ALJ's decision was based reflects that Plaintiff was 46 years old on his alleged disability onset date, with a limited education. (Tr. 26). Plaintiff had past relevant work as a delivery man. (Tr. 25).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "coronary artery disease, status post coronary artery bypass grafting x 4; lumbosacral spine degenerative disc disease/spondylolisthesis; asthma/chronic obstructive pulmonary disease; obesity; depressive disorder not otherwise specified; and personality disorder not otherwise specified." (Tr. 17). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform work activity except as follows:

> He can lift and/or carry up to 10 pounds occasionally and 5 pounds frequently. He can stand and/or walk up to 2 hours in an 8-hour workday. He can sit up to 6 hours in an 8-hour workday. He can never crawl or climb ladders, ropes, or scaffold, but he can occasionally stoop, kneel, crouch, and climb ramps and stairs. He can never work at unprotected heights. He should not work with concentrated exposure to extreme cold, extreme heat, fumes, noxious odors, dusts, or gases. Mentally, he is able to make only simple work-related decisions. His job should not require more than ordinary and routine changes in work setting or duties.

(Tr. 19). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy, including such jobs as assembler, inspector, and hand packager.  (Tr. 26-27). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) determining that Plaintiff could perform and sustain other work; and 2) failing to give controlling weight to the opinion of Plaintiff's treating physicians in formulating Plaintiff's RFC assessment.  Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## B.  Specific Errors

Plaintiff's statement of errors challenges the ALJ's step-five determination that he is capable of performing and sustaining other work and also challenges the ALJ's RFC assessment.  Plaintiff further asserts that the ALJ improperly relied on the testimony of the vocational expert.  Each assertion will be addressed in turn.

### 1. Relevant Medical Evidence[1] and the ALJ Decision

With respect to Plaintiff's pulmonary and respiratory issues, the record indicates that in early 2008, Plaintiff underwent stress testing that showed viable myocardium mixed with scar tissue throughout a left and right ventricle and a cardiac catheterization

---

[1] As summarized by Plaintiff and the ALJ, and relied upon by the Commissioner.  (*See* Tr. 17, 19-25; Doc. 10, 2-8; Doc. 11 at 2)

showed complete occlusion of the right coronary artery, distally acute marginal branch with a proximal high grade stenosis; and a severe left anterior descending artery, diagonal artery and circumflex lesions. (Tr. 246, 248-249; 373-374).  Plaintiff was admitted to University Hospital for coronary artery bypass grafting (Tr. 243).

Plaintiff underwent an echocardiogram in March 2008 that showed an ejection fraction of 55% and the left atrium was mildly dilated.  (Tr. 342).  In May 2008, Plaintiff complained of dry cough and the clinic physician believed Plaintiff's cough was a side effect of Lisinopril and discontinued this medication. (Tr. 339).  A month later, Plaintiff continued to have dry cough and was referred to the pulmonary clinic. *Id.* The pulmonary clinic physician felt Plaintiff's cough was due to GERD vs. COPD vs. ILD vs. tobacco use. (Tr. 324).  The physician ordered a high resolution CT and pulmonary function tests. Id. The CT showed mild diffuse air trapping and small airway disease. (Tr. 314, 421).

In January 2009, Plaintiff presented to the emergency room at University Hospital with 2-3 months of chest pain and radiation to the left arm.  (Tr. 305). An angiography showed severe coronary artery disease with patent right interior mammary artery to left anterior descending, patent left interior mammary artery to diagonal branch, patent radial artery graft to obtuse marginal branch which had 50% ostial stenosis. (Tr. 310-311).  Observation and aggressive medical therapy was recommended.  (Tr. 311).

In July 2009, Plaintiff presented to St. Luke Hospital with shortness of breath and chest pain.  (Tr. 445).  Plaintiff was admitted and ruled out for myocardial infarction. His

symptoms were attributed to asthma exacerbation and he was discharged after one day (Tr. 449).

Plaintiff underwent pulmonary function testing in March 2010 which showed restrictive defect and air trapping. (Tr. 459).  During testing, he walked for 5 minutes and stopped due to shortness of breath.

The record also contains evidence relating to Plaintiff's back and knee pain. Notably, in March 2009, Plaintiff was evaluated at the orthopedic clinic for back pain. The clinic physician found pain with range of motion maneuvers and limited range of motion in the hip. (Tr. 277).   An x-ray of the lumbar spine showed severe osteochondrosis at L3-L4 and L4-5 and degenerative retrolisthesis of L4 and right knee x-ray showed bipartite patella (Tr. 280).   Plaintiff was diagnosed with L4-5, L5-S1 spondylosis and right knee patellofemoral pain syndrome.   (Tr. 277).   The clinic physician recommended a lumbar epidural steroid injection (LESI) and physical therapy. (Tr. 278).

On May 7, 2009, Plaintiff presented to Nasr Enany, MD at the University Hospital Pain Clinic.  On exam, he had antalgic gait and bilateral wheezing. (Tr. 480).  A lumbar epidural steroid injection was recommended and the procedure was performed on May 20, 2009. (Tr. 477). On follow up, Plaintiff had improvement of back pain but also complained of lower extremity pain.  (Tr. 476).

In July 2009, Plaintiff's knee pain continued to bother him, especially with walking and stairs.  (Tr. 470).  It was recommended he undergo a medial branch block at L3

7

through S1 and this procedure was performed on November 18, 2009 (Tr. 464, 467). A lumbar MRI performed in December 2009 showed increased loss of disc height at L4-5; disc desiccation at L3-4 and L4-5; moderate disc height loss at L4-5; moderate sized central disc extrusion superimposed on diffuse disc bulge abutting the ventral thecal sac; and moderate bilateral foraminal stenosis (Tr. 462).

Plaintiff was referred to the neurosurgery clinic at University Hospital in April 2010 for his low back pain.  On exam, he had antalgic gait and paraspinal and spinal tenderness.  (Tr. 455).  The clinic physician did not feel surgery would benefit Plaintiff as his symptoms were in the back only. *Id.*

The record also contains the following opinion evidence:

In November 2008, Plaintiff presented to Jennifer Bailey, MD for consultative evaluation.  Plaintiff complained of shortness of breath and reported increased symptoms with climbing stairs or walking up grades.  (Tr. 264).  Plaintiff stated that he could walk no more than ½ block without shortness of breath. Id. He has mid chest pain 3-4 times per week, lasting less than five minutes.  *Id.*  Plaintiff also reported back pain exacerbated by prolonged standing, as well as bending and lifting. *Id.*  On physical exam, Plaintiff had elevated blood pressure of 149/77; was dyspneic; had distant breath sounds and expiratory wheezing and prolonged expiratory phase; and edema over the ankles.  (Tr. 265).  Dr. Bailey's impression was shortness of breath with ongoing tobacco abuse; status post coronary artery bypass grafting x 4 with chest pain, likely angina; obesity; chronic back pain and recent diagnosis of obstructive sleep apnea.  (Tr.

266).  Based on her exam, Dr. Bailey opined that Plaintiff was capable of performing a mild amount work related activity and would do best in a dust-free environment.  (Tr. 267).

In December 2009, relying on Dr. Bailey's report, a non-examining DDS physician completed a physical RFC limiting Plaintiff to frequently lift/carry 10 pounds; occasionally lift/carry 20 pounds and sit and stand/walk about 6 hours in an 8-hour workday.  (Tr. 269).

In July 2010, Dr. Mital, Plaintiff's treating physician of six months at University Hospital, opined that Plaintiff was limited to standing/walking about 2 hours; sitting at least six hours; rarely lifting less than 10 pounds; and no crouching/squatting or climbing ladders or stairs.  (Tr. 512-513).  Dr. Mital further opined that Plaintiff would need to take frequent and prolonged, unscheduled breaks and would miss more than 4 days per month.  (Tr. 512, 514).

Also in July 2010, Plaintiff's pulmonary specialist at University Hospital, Dr. Meraj limited Plaintiff to sitting and standing/walking less than 2 hours in an 8 hour day and wrote that Plaintiff should avoid all exposure to environmental elements, including cigarette smoke, perfumes, solvents/cleaner, fumes, dust and chemicals. (Tr. 517-518).

In evaluating the record evidence and determining Plaintiff's RFC, the ALJ noted Plaintiff had a history of coronary artery disease, pulmonary/breathing impairment, lumbar spine pain, obesity and mental impairments.  Despite such impairments, the ALJ noted that the record indicated that Plaintiff made very good progress following a

9

procedure for coronary artery bypass grafting in February 2008.  (Tr. 21, 243-47).
Notably, as early as February 27, 2008, Plaintiff was deemed to be making "excellent
progress" and his only restriction was against lifting heavy objects until March 14, 2008
(Tr. 259).   During a November 2008 examination as part of Plaintiff's disability
application, Dr. Jennifer Bailey also noted no marked cardiac abnormalities — such as
congestive heart failure, murmurs, or gallops.  (Tr. 21, 267).  Additionally, objective test
results in January 2009 were normal and revealed no significant abnormalities when
Plaintiff reported to the hospital for chest pain complaints (Tr. 21, 303, 312).

The ALJ also noted that, while Plaintiff experienced shortness of breath,
objective evidence and clinical findings failed to document that this impairment was
disabling. (Tr. 21-22.)  In September 2008, a CT scan showed only "mild" air trapping
consistent with "small airway disease" in Plaintiff's lungs (Tr. 421).  Dr. Bailey also noted
certain signs consistent with shortness of breath, such as wheezing and a mild
prolonged expiratory phase, but failed to document significant pulmonary abnormalities
such as crackling (rales), rattling (rhonchi), or evidence of cyanosis (skin discoloration
due to low oxygen levels).  (Tr. 21, 265).  The ALJ further noted that pulmonary testing
in March 2010 also failed to demonstrate a disabling pulmonary impairment, as it
showed "no demonstrable obstructive defect" and only a "mild" restrictive defect in lung
volume (Tr. 22, 459).   In fact, despite alleging that he suffered from a disabling
pulmonary impairment, the record showed that Plaintiff continued to smoke cigarettes

(Tr. 22).  Dr. Bailey noted that Plaintiff "smoke[d] heavily," and Plaintiff reported in July 2009 that he smoked 1/2 pack a day when seeking treatment (Tr. 22, 267, 445).

The ALJ observed that Plaintiff experienced low back pain and degenerative changes in his lumbar spine (Tr. 22).  However, the ALJ found that the record failed to document that this impairment caused disabling limitations. (Tr. 22). The ALJ first observed that, although one of Plaintiff's doctors recommended epidural injections for his back pain in June 2007, Plaintiff waited nearly two years before seeking out this relief (Tr. 22, 385, 477).  In addition, the record showed that examination findings related to Plaintiff's back were largely normal and failed to document disabling limitations (Tr. 22). For example, Dr. Bailey's examination revealed no spinal abnormalities and included normal straight leg raising, normal range of motion, no muscle weakness, spasms or tenderness, and normal sensation (Tr. 266).

With respect to the opinion evidence, the ALJ gave significant weight to the opinions of Dr. Bailey and the reviewing state agency physicians. The ALJ gave some weight to the opinion of Dr. Mital, Plaintiff's primary care physician, because it was not entirely consistent with the objective medical evidence.  The ALJ also gave "less weight" to Dr. Meraj's opinion.  The ALJ noted that Dr. Meraj report refers to a pulmonary function study (presumably from March 2010), which was interpreted as showing no obstructive defect and only a mild restrictive defect.  The ALJ further noted that Dr. Meraj's extent of contact with Plaintiff, as well as his specialty, were unclear.

2.  *The ALJ's RFC Assessment is supported by substantial evidence*

In challenging the ALJ's decision, Plaintiff's primary argument is that the ALJ improperly weighed the medical evidence of record and erred by failing to give controlling weight to the findings of Plaintiff's treating physicians.  As fully detailed below, Plaintiff's contention is not well-taken.

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to credit the functional limitations found by Drs. Mital and Meraj.  As noted above, his treating physicians indicated that his impairments would cause frequent absences from work and limited him to a dust-free environment.  Plaintiff argues that such limitations would preclude him from sustaining gainful employment as defined by agency regulations.  Plaintiff contends that the "ALJ offers no appropriate reason for the weight he accorded to the opinion of Dr. Mital."  (Doc. 10 at 13).  Plaintiff further argues that the reasons given by the ALJ in assigning less weight to Dr. Maraj's opinion are not supported by the record.  Upon careful review, the undersigned finds that the ALJ's RFC is substantially supported.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"  *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ does not accord controlling weight to a treating

physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); but see *Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see also *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his

13

conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Here, the undersigned finds that the ALJ provided good reasons for giving neither controlling weight nor deference to the opinions of Dr. Mital and Dr. Meraj.  As detailed above, the ALJ gave some weight to Dr. Mital's assessment, namely his findings regarding Plaintiff's sitting, standing, and walking limitations in a normal workday.  However, the ALJ found that the restrictive nature of the remainder of Dr. Mital's opinion was not consistent with or supported by the objective evidence in the record.  (Tr. 23).  Although his opinion generally referenced objective test results (Tr. 510), Dr. Mital failed to provide any explanation as to how this evidence supported the restrictions in his opinion.  Dr. Mital also failed to cite objective evidence that would support his finding that Plaintiff's impairments caused him to miss more than four days of work each month.  (Tr. 514).  As noted by the Commissioner, no other doctor in the record indicated that Plaintiff's impairments would cause him to miss near that amount of work.  *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion.").

Furthermore, Plaintiff's additional challenges to the ALJ's RFC assessment are not well-taken.  Plaintiff asserts that since his alleged onset date of January 2008, Plaintiff has had "no less than 50 doctor visits, including x-rays, MRI's and surgical procedures; several ER visits; and 2 hospital admissions."  (Doc. 11, citing Tr. 243-259, 276-421, 445-508, 519-528).  Based on such evidence, Plaintiff maintains that he would not be to sustain gainful work activity.[2]  Such evidence, however, does not mandate a disability finding.  *See Robinson v. Astrue*, 1:10-CV-689, 2011 WL 6217436 (S.D. Ohio Dec. 14, 2011) (record did not contain any medical source opinions about the likelihood of absenteeism caused by Plaintiff's impairments and the ALJ's assessment that her past history of medical treatments did not necessarily indicate the need for treatment during working hours was substantially supported)

Plaintiff further asserts that the ALJ erred by failing to include a limitation of the need to work in a dust-free environment.  Specifically, Plaintiff argues that while the ALJ gave "significant" weight to Dr. Bailey's opinion he failed to explain why he did not include Dr. Bailey's finding of the need for a dust free environment in his RFC.  However, as correctly noted by the Commissioner, the ALJ acknowledged Dr. Bailey's opinion and her restriction for a "dust-free environment" both in his decision and at the administrative hearing.  (Tr. 22, 68).  The ALJ's decision accounted for this restriction by precluding Plaintiff from working in environments that involved "concentrated exposure

---

[2]    SSR 96-8 provides that an RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis.  *See* SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *See also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule").

to . . . dusts" (Tr. 19). Furthermore, at the administrative hearing, the ALJ indicated that he did not believe that a truly dust-free work environment was in existence. (Tr. 68). The vocational expert corroborated the ALJ's interpretation, testifying that there was no "such a thing as a dust free environment" because "all environments have some dust" (Tr. 69). As recently noted by Judge Hogan:

> We believe the ALJ reasonably accommodated Plaintiff's lung condition by his residual functional capacity assessment and resulting hypothetical question that Plaintiff avoid concentrated exposure to dust. Dr. Schapera did not restrict Plaintiff to a dust-free environment; he merely stated that Plaintiff would do best in a dust-free environment, an observation that would most likely be true of both the writer and the readers of this opinion. If levels of dust were to be problematic, there are masks readily available to employees at minimal costs. We do not interpret Dr. Schapera's comment as requiring that Plaintiff work only in a bubble. For the reasons stated above, we find the ALJ's residual functional capacity assessment and hypothetical question to be fair descriptions of Plaintiff's functional limitations. We find, therefore, that the ALJ's decision is supported by substantial evidence and should be affirmed.

*Fields v. Comm'r of Soc. Sec.*, 1:08CV827, 2010 WL 753352 (S.D. Ohio Mar. 4, 2010).

In light of the foregoing, the undersigned finds that the ALJ reasonably determined that Plaintiff should not work with concentrated exposure to extreme cold, extreme heat, fumes, noxious odors, dusts, or gases, given his pulmonary condition and complaints.[3]

---

[3] Furthermore, as noted by the ALJ and Dr. Bailey, Plaintiff continues to smoke heavily despite his respiratory and pulmonary complaints.

3. *The ALJ properly relied on the testimony of the vocational expert*

Plaintiff further contends that the testimony of the vocational expert is not consistent with the ALJ's RFC assessment and therefore the ALJ's step-five determination is not supported by substantial evidence.

Here, based on the hypothetical posed by the ALJ, the VE testified that Plaintiff could perform unskilled, sedentary work as an assembler, inspector and hand packager. (Tr. 26). In the body of his decision the ALJ stated that the "undersigned finds that the Plaintiff's physical impairments limit him to work at a less than sedentary exertional level." (Tr. 23). Plaintiff argues, however, that the jobs cited by the vocational expert are classified at the sedentary exertional level by the Dictionary of Occupational Titles. As such, Plaintiff argues that he would not be capable of performing them if limited to less than sedentary. (Tr. 66). Plaintiff further asserts that the jobs identified by the vocational expert were inconsistent with the ALJ's RFC finding because they required frequent exposure to contaminants (pollutants, gases, dusts, odors, etc.) while the ALJ's RFC finding required Plaintiff to avoid concentrated exposure to fumes, dusts, odors, and gases. (Doc. 10 at 13; Tr. 19).

The Sixth Circuit has held, however, that an ALJ may rely on VE testimony even if there is an apparent conflict between the VE's testimony and the DOT. See *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). Notably, the ALJ has a duty under Social Security Ruling 00–4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to

whether or not there is such consistency." SSR 00–4p.  Where, the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE.  See *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir. 2009).  The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id.*; *See also* SSR 00–4p ("If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

Here, the vocational expert expressly testified that a hypothetical person with Plaintiff's physical and mental limitations would be able to perform the jobs identified above. (Tr. 65-66).  The ALJ inquired, "have you classified these jobs consistently with how they're classified in the Dictionary of Occupational Titles and Seclected Characteristics of Occupations?" (Tr. 66-67).   The VE responded, "Yes".  (Tr. 67). Plaintiff's counsel did not question the VE about any apparent inconsistencies between the testimony and the DOT relating to reasoning levels, nor did counsel bring any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under SSR 00–4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley*, 560 F.3d at 606 (citing *Martin v. Commissioner of Social Security*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent

investigation into the testimony of witnesses to determine if they are correct.")). Because the ALJ specifically asked the VE if his testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform. *Id.*

Furthermore, the "D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00–4p (emphasis added).  In other words, listings in the DOT reflect the maximum requirements for the sedentary jobs listed by the VE, and not the range of specific requirements an individual must satisfy to perform the jobs.  See *Hall v. Chater*, 109 F.3d 1255, 1259 (5th Cir. 1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."); *see also French v. Astrue*, No. 2:08–cv–15, 2009 WL 151525, at *8 (E.D. Ky. Jan. 20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT."  SSR 00–4p.  Thus, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs identified at step five of the sequential evaluation process despite the DOT's listing of reasoning level three for such jobs.  Accordingly, the ALJ's decision is substantially supported in this regard.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1)   The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2)  As no further matters remain pending for the Court's review, this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES SWAFFORD,                                     Case No. 1:12-cv-19

    Plaintiff,                                              Barrett, J.
                                                             Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).